Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000559
27-JUN-2014
08:51 AM

NO. CAAP-11-0000559

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

AMERICAN SAVINGS BANK, F.S.B., Plaintiff-Appellee,
v.
JOHN RIDDEL, JR., Defendant-Appellant
and
KEVYN KELII PAIK, WENDY S.L. PAIK, Defendants-Appellees,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, DOE ENTITIES 1-10, and
DOE GOVERNMENTAL UNITS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 10-1-0118)

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Ginoza, JJ.)

Defendant/Appellant John Riddel, Jr. (**Riddel**) appeals
from the Circuit Court of the Fifth Circuit's (**circuit court**)[1]
"Judgment on Findings of Fact, Conclusions of Law and Order
Granting Plaintiff's Motion for Summary Judgment and Decree of
Foreclosure Against All Defendants on First Amended Complaint,
Filed June 17, 2010" (**Judgment**), filed June 22, 2011. As part of
his appeal he seeks review of the circuit court's underlying
orders: (1) "Order Denying Defendant John Riddel, Jr.'s Motion to
Dismiss for Improper Venue, Filed April 7, 2011" (**Order Denying
Motion to Dismiss**), filed June 22, 2011 and (2) "Findings of
Fact, Conclusions of Law and Order Granting Plaintiff's Motion
for Summary Judgment and Decree of Foreclosure Against All

---

[1] The Honorable Randal G. B. Valenciano presided.

Defendants on First Amended Complaint, Filed June 17, 2010"
(**FOFs/COLs/Order**), filed June 22, 2011.

Riddel contends the circuit court erred by:[2]

(1)  hearing the case because the venue in Lihue,
Kaua'i, was statutorily improper, relatively inconvenient, and
all parties did not object to transfer;

(2) failing to find numerous material facts in genuine
dispute as supported by expert banking testimony pertaining to
predatory lending, loan terms having been switched on Riddel at
closing, and Plaintiff-Appellee American Savings Bank, F.S.B.
(**ASB**) having conspired with Riddel's co-borrowers to fake his
qualifying for the loan in violation of ASB's underwriting
guidelines; and

(3) entering findings of fact and conclusions of law
(**FOFs/COLs**) that were incomplete, do not address Riddel's
equitable and legal claims and defenses, and were untrustworthy
because they adopt, verbatim, ASB's proposed FOFs/COLs.

## I.  BACKGROUND

By Conditional Loan Approval Letter dated April 10,
2006, ASB loaned Riddel $432,000.  The terms provided for
repayment in 36 months, a floating interest rate, a floating
estimated annual percentage rate, and floating lock expiration.
The repayment terms specified monthly payments of $2,384.99 for
the first 35 months, and a final balloon payment in the amount of
$434,384.98.

A Warranty Deed executed on May 2, 2006 reflects
Defendants-Appellees Kevyn Kelii Paik (**Kevyn**), Wendy S.L.
Paik, (collectively, **the Paiks**) and Riddel as grantees of vacant
land located at 5-7363 Kuhio Highway, Wainiha, Hawai'i 96714; TMK
No. 5-8-009-039(4) (**Property**).

A document, addressed to Wanda Hee (**Hee**), an ASB loan
officer, dated April 10, 2006, notarized on April 11, 2006, and
signed by Kevyn, stated:

Wanda Hee:

---

[2]      Riddel's opening brief fails to comply with Hawai'i Rules of
Appellate Procedure (**HRAP**) Rule 28(b)(1) because it does not contain a table
of authorities.  Riddel's counsel is warned that future non-compliance with
HRAP Rule 28 may result in sanctions.

2

> I Kevyn [P]aik will be gifting John [Riddel] $60,000 dollars
> for a down payment on vacant land in Haena Kaua[']i tmk 5-8-
> 9-39.
> Sincerely,
> Kevyn Paik
> Owner

An unsigned Truth in Lending Disclosure Statement dated May 8, 2006 identified Riddel as the borrower, ASB as the lender, $430,039.37 as the amount of credit extended to Riddel, and $460,619.88 as the amount Riddel would have paid after eleven monthly payments of $2,384.99 (beginning July 1, 2006) and one payment of $434,384.99 due on June 1, 2007.

An unsigned Settlement Statement dated May 12, 2006 reflects the Paiks as the borrowers, ASB as the lender of $432,000, and the sale/purchase price of the Property as $540,000.

A notarized, signed, mortgage instrument dated May 29, 2007 (**Mortgage**) names the Paiks and Riddel as "borrower" of $432,000, names ASB as the lender, and provides "[b]orrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2008" and that the borrower would execute a balloon rider and a 1-4 family rider.[3] Riddel and the Paiks' signatures are provided on two separate "page 12" documents to this Mortgage. The Mortgage identified the "Note" as "the promissory note signed by Borrower and dated May 29, 2007" (**Note**), which indicated Borrower, Paiks and Riddel, owed Lender, ASB, $432,000 plus interest.

A balloon payment rider dated May 29, 2007 and signed by Riddel states the "Note is payable in full at the end of 12 months." An identical, undated balloon payment rider also provides for full payment of the mortgage at the end of 12 months and is signed separately by the Paiks. ASB introduced an undated document signed by Riddel that Damon J. Stanford (**Stanford**), a Loss Mitigation and Recovery Manager in ASB's Collections and

---

[3] A "1- to 4-family residential property" means "[p]roperty containing fewer than five individual dwelling units, including manufactured homes permanently affixed to the underlying property (when deemed to be real property under state law)." Office of the Comptroller of the Currency (O.C.C.), <u>Commercial Real Estate and Construction Lending</u>, 1995 WL 905400 at 3.

Recovery Services division, declared to be a promissory note, executed on May 29, 2007 for a principal sum of $432,000. This document was titled "Balloon Note" and identified the Property and June 1, 2008 as the maturity date for repayment.

An unsigned, undated document entitled "Balloon Payment Rider," which identified the Paiks and Riddel as signatories, provides that it "is incorporated into and shall be deemed to amend and supplement the Mortgage . . . to secure Borrower's promissory note to [ASB]" and that the "Note is payable in full at the end of 36 months."

On June 1, 2007, a mortgage on the Property, identifying the Paiks and Riddel as borrowers and June 1, 2008 as the maturity date for repayment of $432,000, was recorded in the Bureau of Conveyances.

A Settlement Statement dated June 1, 2007 identified Riddel as the Borrower of $432,000 from ASB, and identified the Property as the subject of the settlement. An "additional deposit" of $3,186.32 was "paid by or in behalf of" the borrower.

By letter dated February 2, 2010, ASB informed Riddel that his Mortgage had matured on June 6, 2008 and, pursuant to the Note executed on May 29, 2007, he was now in default and required to pay outstanding amounts totaling $458,666.84 after thirty days. An identical letter was sent to the Paiks on the same day.

On May 26, 2010, ASB filed a Complaint against the Paiks and Riddel. On June 16, 2010, counsel for ASB informed the Paiks and Riddel that the Balloon Note had matured on June 1, 2008 and the amount due as of June 15, 2010 was $469,741.35. On June 17, 2010, ASB filed a First Amended Complaint, which was served to the Paiks on July 22, 2010 in Kilauea, Kaua'i; and served to Riddel on July 26, 2010 in Honolulu, O'ahu.

In September 2010, Riddel and Stanford exchanged emails under the subject title "RE: Short Sale of Land on Kaua[']i." Riddel contacted Stanford to "resolv[e] the foreclosure of the land on Kaua[']i" and indicated that he would counter an offer of $295,000 on the property with a proposed sale price of $325,00 in order to reduce the deficiency owed to ASB. Stanford replied

that ASB did not oppose Riddel's counter offer and further advised Riddel "that the foreclosure action will continue and [sic] until all parties reach a mutually agreed upon resolution as to the deficiency and the related terms and conditions." Riddel suggested using his "Waikoloa rental on Hawai[']i as a means to satisfy the agreement amount of settlement. Since ASB agreed less than a year ago to a sale price of 325k plus a 10k cash payment, I would propose splitting the difference of the sale price now vs. before." Riddel was anxious to complete the transactions because his "so called partner on this [P]roperty is going to be sentenced [to federal prison] soon (October) and it may be difficult to finalize closing documents and signatures with him being incarcerated." Stanford replied with ASB's counterproposal of a $10,000 cash contribution due at closing and a $92,000 promissory note from Riddel, secured by his principal residence. Riddel declared that he had contacted Stanford after receiving the complaint and began to negotiate a settlement "in the belief that no further court action would be taken until our settlement discussions concluded[.]"

On October 14, 2010, ASB filed a request for entry of default against the Paiks and Riddel, who had failed to answer ASB's complaint. Also on October 14, 2010, the circuit court clerk entered default against the Paiks and Riddel.

On October 19, 2010, ASB filed a "Motion For Summary Judgment And Decree of Foreclosure Against [the Paiks and Riddel] on First Amended Complaint Filed June 17, 2010" (**MSJ/Foreclosure**) The Note was attached to ASB's motion. Oppositions to the MSJ/Foreclosure were filed by both Riddel and the Paiks, Riddel on March 15, 2011 and the Paiks on April 20, 2011.

By letter dated March 15, 2011, which was attached to Riddel's memorandum opposing summary judgment, William C. Sarsfield (**Sarsfield**), a banking consultant, stated that he had been engaged by the Dubin Law Offices to review the "situation" involving ASB, the Paiks, and Riddel "in order to be prepared to offer expert testimony on the appropriateness and propriety of a real estate loan extended by [ASB] to [Riddel]." Sarsfield has served as an expert witness in numerous court cases. Sarsfield

listed documents that he reviewed. Paragraph 5 of the list identified a copy of the Note, requiring payment of $432,000 on a maturity date of June 1, 2008 executed solely by Riddel. Sarsfield also reviewed the Mortgage on the Property, "dated May 29, 2007, borrower(s) [the Paiks and Riddel], referencing a $432,000 signed by borrower, further noting that all three individuals signed as borrowers, although as [noted] in Paragraph 5 above, the [N]ote was only signed by [Riddel]." Sarsfield provided the following opinions: (1) ASB did not conduct its banking relationship with Riddel in a manner consistent with accepted banking practice; (2) ASB breached bank regulatory directives in structuring the vacant land loan to Riddel; (3) Riddel was prejudiced in his ability, as borrower, to fulfill the requirements of the loan as structured by ASB; and (4) ASB engaged in deceptive and unfair practices in its lending relationship with Riddel.

On March 17, 2011, ASB filed its reply in support of its MSJ/Foreclosure.

On April 11, 2011, Riddel filed his "Motion to Dismiss for Improper Venue or in the Alternative to Transfer Venue Pursuant to Section 603-36(5) [(1993)] and Section 603-37.5 [(1993)] of the Hawaii Revised Statutes,"[4] (**Motion to Dismiss/Transfer**) and a "Motion to Set Aside the Clerk's Entry of Default" (**Motion to Set Aside Default**).

On April 28, 2011, the circuit court held a hearing on ASB's MSJ/Foreclosure, and Riddel's Motion to Dismiss/Transfer

---

[4]  Hawaii Revised Statutes (**HRS**) § 603-37.5, provides:

§**603-37.5 Cure or waiver of defects.** (a) The circuit court of a circuit in which is commenced a civil case laying venue in the wrong circuit shall transfer the case, upon or without terms and conditions as the court deems proper, to any circuit in which it could have been brought, or if it is in the interest of justice dismiss the case.

(b) Nothing in sections 603-36 to 603-37.5 shall impair the jurisdiction of a circuit court of any matter involving a party who does not interpose timely and sufficient objection to the venue.

6

and Motion Set Aside Default. Riddel's counsel restated Riddel's position that venue was improper and the Paiks' counsel took no position on the issue. ASB's counsel argued that the venue was proper but "we're not opposed, or we're not going to strongly advocate that the case stay in Kaua['] i." The circuit court found the venue was proper, although inconvenient for all but one attorney involved in the case, and denied Riddel's Motion to Dismiss/Transfer.

The circuit court granted Riddel's Motion to Set Aside Default. Counsel for both parties agreed the Paiks did not sign the Note and would not be liable for any deficiency. The circuit court found the Paiks did sign the mortgage but did not sign the note.

Riddel's counsel argued that ASB's MSJ/Foreclosure should be denied because "there were fraudulent acts in the origination of this [N]ote and [M]ortgage. That means that if what [Riddel] says is proven at trial, then the note and mortgage are void and unenforceable." The circuit court responded:

> Based on the information before the [circuit court], the [c]ourt looking at the four factors cited by [Bank of Honolulu N.A. v. Anderson, 3 Haw. App. 545, 654 P.2d 1370 (1982)] there's sufficient evidence of the existence of the [M]ortgage and [N]ote. The terms of the [M]ortgage and [N]ote are specified within the [M]ortgage and [N]ote. There was default by Defendant Riddel, and Defendant Riddel had the requisite notice. The [circuit court] will be granting the [MSJ/Foreclosure].

On June 22, 2011, the circuit court filed its FOFs/COLs/Order concluding it had jurisdiction over the parties and subject matter of the case, and that venue in the Fifth Circuit was proper. The circuit court also concluded: (1) ASB's Mortgage was a valid first lien on the Property; (2) ASB was entitled to have its Mortgage foreclosed; (3) ASB was due $475,637.24 "plus per diem interest accrual for each day after September 14, 2010 until paid (currently $75.4521 per diem at 6.375% per current term)" and other amounts the court would subsequently determine; (4) Riddel would be liable for any deficiency after the sale and rent of the property; and (5) that ASB was entitled to judgment as a matter of law on its complaint.

On June 22, 2011, the circuit court filed its Order Denying Motion to Dismiss and entered Judgment. On July 25,

7

2011, Riddel filed his notice of appeal.

## II. STANDARDS OF REVIEW

We review the circuit court's grant of summary judgment de novo.

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008) (citations omitted).

> Furthermore, in deciding a motion for summary judgment, a circuit court must keep in mind an important distinction:
>
> > A judge ruling on a motion for summary judgment cannot summarily try the facts; his role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. This is true even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper.
>
> Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 224, 629 P.2d 635, 638-39 (1981) (quoting 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2725 (1973)).

Childs v. Harada, 130 Hawai'i 387, 396, 311 P.3d 710, 719 (App. 2013) (concluding the lower court exceeded its role in adjudicating the motions for summary judgment by drawing disputed inferences from predicate facts to determine the essential fact at issue).

> Courts will treat the documents submitted in support of a motion for summary judgment differently from those in opposition. Although they carefully scrutinize the materials submitted by the moving party to ensure compliance with the requirements of Rule 56(e), HRCP (1990), the courts are more indulgent towards the materials submitted by the non-moving party. This is because of the drastic nature of summary judgment proceedings, which should not become a substitute for existing methods of determining factual issues.

Miller v. Manuel, 9 Haw. App. 56, 66, 828 P.2d 286, 292 (1991) (internal citations omitted).

A movant has the burden of producing evidence to support a motion for summary judgment, however, if "the movant does not bear the ultimate burden of persuasion on a particular claim at trial, it may satisfy its initial burden by pointing out that the record lacks substantial evidence to support a necessary element of the nonmovant's claim." Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 255, 172 P.3d 983, 999 (2007) (citation omitted). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Marvin v. Pflueger, 127 Hawai'i 490, 495, 280 P.3d 88, 93 (2012).

### III. DISCUSSION

#### A.

Riddel contends HRS § 603-36(5) required the proceedings be held in the First Circuit because Riddel was domiciled on O'ahu. Riddel also contends "ASB's own [MSJ/Forclosure] recited that the claim for relief arose" in Honolulu. HRS § 603-36(5) provides:

> **§603-36 Actions and proceedings, where to be brought.** Actions and proceedings of a civil nature within the jurisdiction of the circuit courts shall be brought as follows:
>
> . . . .
>
> (5) Actions other than those specified above shall be brought in the circuit <u>where the claim for relief arose or where the defendant is domiciled; provided if there is more than one defendant, then the action shall be brought in the circuit in which the claim for relief arose unless a majority of the defendants are domiciled in another circuit, whereupon the action may be brought in the circuit where the majority of the defendants are domiciled</u>.

(Emphasis added.)

Riddel contends that because ASB's "action" did not fall under other provisions of HRS § 603-36(1)-(4) (1993) and ASB's claim for relief arose in Honolulu, where he was domiciled and was served notice of ASB's action, the Fifth Circuit was an improper venue and ASB's action must be dismissed. We disagree.

The Fifth Circuit was the proper venue and the circuit court did not err by hearing the instant case. The Fifth Circuit was the proper venue because ASB brought an action to foreclose on the mortgaged property and the property was on Kaua'i. <u>See</u>

9

92A C.J.S. Venue § 23 ("Suits to enforce or foreclose mortgages and other liens ordinarily must be brought in the county where the property is situated.").

Further, the plain terms of HRS § 603-36(5) provide that when there is more than one defendant, "the action may be brought in the circuit where the majority of defendants are domiciled." The Paiks were served with ASB's First Amended Complaint in Kilauea, Kaua'i and were identified in that complaint as residents of the County of Kaua'i, State of Hawai'i. Because the majority of defendants were domiciled in Kaua'i, the Fifth Circuit was a proper venue under HRS § 603-36(5).

**B.**

In granting summary judgment in favor of ASB, the circuit court stated ASB had established facts required under Bank of Honolulu.

> To be entitled to the remedy sought, the Bank was required to prove the following material facts: (1) the existence of the Agreement, (2) the terms of the Agreement, (3) default by [Defendant] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect.

Id. at 551, 654 P.2d at 1375 (citation omitted).

Riddel contends the circuit court erred by finding there was an enforceable contract. He contends the loan terms were switched on him at closing, that ASB "conspired" with the Paiks to qualify Riddel for the ASB loan, and that Sarsfield's expert testimony on ASB's "deceptive" lending practices demonstrated genuine issues of material facts and therefore summary judgment for ASB was wrong. In his opposition to ASB's MSJ/Foreclosure, Riddel contended the Note was an unenforceable contract because it was void as a matter of public policy and constituted fraudulent and an unfair and deceptive act or practice (**UDAP**) under HRS § 480-2 (2008 Repl.).

A UDAP committed "in the conduct of any trade or commerce [is] unlawful." HRS § 480-2(a). A contract or agreement in violation of HRS Chapter 480 is void and not enforceable. See HRS § 480-12 (2008 Repl.). The mortgage loan transaction fell within the ambit of HRS Chapter 480, inasmuch as (1) a loan extended by a financial institution is activity

involving conduct of any trade and commerce and (2) loan borrowers are consumers within the meaning of HRS § 480-1 (2008 Repl.). See Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 227, 11 P.3d 1, 15 (2000). Hawai'i's UDAP statute provides for "[t]wo distinct causes of action . . . (1) claims alleging unfair methods of competition; and (2) claims alleging unfair or deceptive acts or practices." Hawai'i Med. Ass'n v. Hawai'i Med. Serv. Ass'n, Inc., 113 Hawai'i 77, 105, 148 P.3d 1179, 1207 (2006). Riddel's UDAP claim falls under the latter category.

In Keka, the defendants' averments raised a genuine issue of material fact in response to the plaintiff's summary judgment motion that sought entry of foreclosure and a judgment dismissing the defendant's UDAP counterclaim. There, the defendants alleged the credit union first offered a 7.25% interest rate then presented defendants with loan documents specifying a 9% interest rate, and "unethically or unscrupulously attempted to influence the Kekas to execute them by way of further deceptive representations, designed, as the Kekas allege, to alleviate their concerns that the interest rate was not that for which they had bargained by assuring them that the actual rate would be [7.25%.]" Keka, 94 Hawai'i at 229, 11 P.3d at 17 (internal quotation marks omitted). The alleged deceptive representation consisted of the credit union's representation to the Kekas that there would be "no problem" with changing their interest rate later "when the in house rate changes" and subsequent inducement of the Kekas' signing a "Notice of the Right to Cancel" and "Disclosure Statement . . . ." Keka, 94 Hawai'i at 217, 11 P.3d at 5.

> Such conduct would have been (1) unethical, oppressive, unscrupulous and substantially injurious to consumers and (2) would have reinforced the tendency to cause the Kekas, as a natural and probable result, to enter into the transaction they may otherwise have declined, thus violating HRS § 480-2 as an unfair and deceptive trade practice.

Keka, 94 Hawai'i at 229, 11 P.3d at 17 (citation and internal quotation marks omitted).

Keka vacated the lower court's summary judgment for the credit union concluding that there were geniune issues of material fact as to whether the credit union engaged in UDAPs in

violation of HRS Chapter 480. See Keka, 94 Hawai'i at 229, 11 P.3d at 17. Under Keka, Riddel was required to raise a general issue of material fact that the conduct on the part of ASB was "unethical, oppressive, unscrupulous and substantially injurious to consumers" and "reinforced the tendency to cause" Riddel to enter into the loan that he may otherwise have declined. Id.

Riddel averred that at the time ASB loaned him $432,000 he "was led to believe that [he] would have '36 months' in which to repay the principal, which was stated within the first page of a blank 'Balloon Payment Rider' I received from [ASB] just prior to closing . . . ." According to Riddel, "unknown to me at the time, the maturity date was switched on me at closing to '12 months[.]'"

ASB contends Riddel "claims that the payment terms of the [N]ote were switched prior to closing, and yet there is no dispute that he still signed the [N]ote." The question of whether Riddel signed the Note, however, is distinct from whether ASB engaged in deceptive practices that led him to sign. See Keka, 94 Hawai'i at 299-30, 11 P.3d at 17-18. If, as Riddel declares, ASB led him to believe his debt would mature for repayment at the end of 36 months, as indicated in documents allegedly provided to him by ASB, and the maturity date was switched on him at closing to 12 months thereby imposing "an unfair and impractical burden on [him] to pay off the principal of the loan in so short a time," then there is a genuine issue as to whether ASB's conduct constituted a UDAP and whether the Note would be a void contract under HRS § 480-12. Riddel thus raised a genuine issue of material fact regarding the validity of the Note and MSJ/Foreclosure for ASB constituted reversible error.

Riddel also alleged that Hee, ASB's loan officer, had Kevyn sign a notarized statement that claimed that Kevyn had gifted Riddel $60,000 toward the down payment on the Property to enable Riddel to qualify for the loan. Riddel declared these events were unknown to him at the time of closing. Riddel's declaration that Kevyn, Hee, or an undiscovered party created this document and that Riddel did not receive a $60,000 "gift" from Kevyn, sufficiently alleged a deceptive practice. Not

12

knowing that he would not qualify for the $432,000 loan or that a $60,000 "gift" had been fabricated to establish his qualification would be a reinforcement of the tendency to cause Riddel, "as a natural and probable result, to enter into the transaction [he] may otherwise have declined . . . ." Keka, 94 Hawai'i at 229, 11 P.3d at 17. Riddel's declaration that a $60,000 "gift" had been fabricated to qualify him for the ASB loan raised a genuine issue of material fact, which rendered summary judgment an inappropriate method of disposing of ASB's claim.

### IV. CONCLUSION

For the foregoing reasons, we affirm the June 22, 2011 "Order Denying Defendant John Riddel, Jr.'s Motion to Dismiss for Improper Venue, Filed April 7, 2011"; vacate the June 22, 2011 "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on First Amended Complaint, Filed June 17, 2010"; and vacate the June 22, 2011 "Judgment on Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on First Amended Complaint, Filed June 17, 2010" all filed in the Circuit Court of the Fifth Circuit. This case is remanded to the circuit court for further proceedings consistent with this opinion. Because we vacate the circuit court's FOF/COL/Order, Riddel's second and third points on appeal are moot.

DATED: Honolulu, Hawai'i, June 27, 2014.

On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
(Dubin Law Offices)
for Defendant-Appellant John
Riddel Jr.

Robert E. Chapman
Katie L. Lambert
(Clay Chapman Iwamura Pulice &
Nervell)
for Plaintiff-Appellee American
Savings Bank, F.S.B.

Presiding Judge

Associate Judge

Associate Judge

13